IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Holmes,                          :
                    Petitioner          :
                                        :
            v.                          :
                                        :
Unemployment Compensation               :
Board of Review,                        :   No. 301 C.D. 2021
                    Respondent          :   Submitted: October 15, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED:  March 25, 2022


            Sandra Holmes (Claimant) petitions for review of the December 23,
2020 order of the Unemployment Compensation (UC) Board of Review (Board)
affirming the decision of the referee finding Claimant ineligible for benefits under
Section 402(b) of the UC Law (Law)[2] because she voluntarily quit her employment
with North East School District (Employer) without a necessitous and compelling
reason.  Claimant contends that she had to resign her employment due to the COVID-

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn
Jubelirer became President Judge.

[2] Section 402(b) of the Law prohibits benefits where a claimant's "unemployment is due
to voluntarily leaving work without cause of a necessitous and compelling nature . . . ."  Act of
December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

19 pandemic (pandemic) and a change in her job duties. Also before the Court, pursuant to our March 25, 2021 order, is the timeliness of Claimant's petition for review. Therein, we directed the parties to address the apparent untimeliness of the petition for review in their principal briefs on the merits or in an appropriate motion. Both parties have briefed the issue, as directed. For the following reasons, we dismiss Claimant's petition for review as untimely filed.

Claimant worked for Employer from September 2, 1991, to March 13, 2020, as a full-time educational aide, at the rate of $13.85 per hour. Certified Record (C.R.) at 9 (Claimant Questionnaire). She was an academic year employee, i.e., employed from August to June. *Id.* Due to the pandemic, Claimant's last day of work in person was March 13, 2020, and she was paid through June 4, 2020. *Id.* at 10. On July 6, 2020, Claimant submitted a "Letter of Retirement," requesting that Employer consider the letter as "official notification of [her] resignation" effective June 7, 2020. *Id.* at 19-20.

Claimant applied for UC benefits on July 12, 2020. C.R. at 3. The UC Service Center sought additional information from Claimant regarding her claim, which she provided by way of a telephonic statement. *Id.* at 26. Claimant stated that she did not return to work because Employer changed her job duties. *Id.* Claimant explained that, instead of working with the regular education children, she was assigned to work with learning support children. *Id.* Claimant stated that, at 61 years of age, she did not believe she was capable of working with children who misbehave or are in wheelchairs. *Id.* Further, she explained that she would no longer be permitted to leave 20 minutes early to get to her part-time job.[3] *Id.* Claimant

---

[3] Claimant's UC claim record shows continued employment with a second employer. Certified Record (C.R.) at 5.

2

stated that Employer told her to accept the new conditions or retire. *Id.* According to Claimant, she was forced to retire because Employer made it impossible for her to keep her job. *Id.*

On August 26, 2020, the UC Service Center issued a notice of determination finding Claimant eligible for benefits (UC Determination). C.R. at 28. The UC Determination noted that Claimant quit for personal reasons stemming from the fact that she had worked with regular education children for 20 years and Employer then changed her job duties to work with mentally and physically challenged children, duties that Claimant felt she was too old to perform. The UC Determination noted that Claimant raised the issue with Employer to no avail. Thus, the UC Determination concluded that Claimant had a necessitous and compelling reason for quitting her job and there were no other alternatives to resolve the situation.

Employer appealed, and a referee held a telephonic hearing on September 25, 2020, to consider whether Claimant's unemployment was due to her voluntarily leaving work without cause of a necessitous and compelling nature. C.R. at 39, 66. Claimant participated in the hearing and testified on her own behalf. *Id.* at 66, 73-79. Employer also participated in the hearing and was represented by its tax consultant representative. *Id.* at 66. Employer's business manager and elementary school principal testified briefly on Employer's behalf. *Id.* at 66-68, 79-86.

After considering the testimony and documentary evidence, the referee issued a decision on September 30, 2020, that reversed the UC Determination and concluded that Claimant was ineligible for UC benefits. In doing so, the referee made the following findings of fact:

3

1. [C]laimant was last employed with North East School District as a Core Area Aide, full-time, making $13.85 per hour, with a last day worked of June 5, 2020.

2. [C]laimant is her [85-year-old] father's caregiver who, in the past, had undergone open heart surgery.

3. Prior to the end of the 2019-2020 school year and during the summer break, [E]mployer had conducted group meetings with employees, which included [C]laimant, discussing the possibility of utilizing staff in different capacities as a result of changes caused by the [COVID]-19 pandemic.

4. [C]laimant interpreted this to mean that she may have to work with students that were mentally challenged and/or in wheelchairs.

5. [C]laimant was concerned because, in or around 2005, [C]laimant had worked with special needs students, and at times [C]laimant was required to lift and/or move those students.

6. [C]laimant felt that the lifting led to her requiring neck and back surgery.

7. [E]mployer did not tell [C]laimant that she would have to work with mentally challenged students or students in wheelchairs.

8. [C]laimant, being [61] years of age, and also the caretaker of her elderly father, also had concerns related to [COVID]-19 in returning to work.

9. After discussing her concerns with union representatives and co-workers, [C]laimant found that [E]mployer had the right to modify [C]laimant's job duties.

10. [C]laimant did not communicate her concerns about her job duty changes or pandemic to her supervisor.

11. On July 6, 2020, during the summer break, [C]laimant submitted a letter of resignation requesting that her retirement be effective June 7, 2020.

12. [E]mployer accepted [C]laimant's resignation, and retroactively made the last day of employment the last day of school for students, which was June 3, 2020.

C.R. at 89-90, Referee's Decision, Findings of Fact (F.F.) Nos. 1-12. Based on the above factual findings, the referee determined that, regardless of the legitimacy of Claimant's concerns about the pandemic or a change in her job duties, she never discussed her concerns with Employer before resigning. C.R. at 90-91. Further, she did not raise her concerns in her resignation/retirement letter. *Id.* at 91. To show that she had a necessitous and compelling reason for resigning, the referee noted that Claimant was obligated to make a reasonable effort to preserve her employment.[4] *Id.* at 90. Because Claimant did not attempt to address her concerns with Employer, such that Employer had no opportunity to address her concerns and offer a possible solution prior to her resignation, Claimant failed to establish that she had a necessitous and compelling reason for ending her employment. *Id.* at 91.

Claimant, proceeding *pro se*, appealed to the Board on October 12, 2020. C.R. at 98-99. She did not raise any legal issues but made several statements. Claimant stated that she could not file a grievance regarding a change of job duties or the pandemic, and she claimed that retiring from employment is different from quitting. *Id.* at 98. Further, had she continued to work during the pandemic, she probably would have become infected and transmitted the virus to her father. *Id.* at 99. Due to his age and heart condition, she claims that he would have died. *Id.*

---

[4] *See Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006) (providing that a claimant who claims to have left her employment for necessitous and compelling reasons has the burden of proving that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and[] (4) the claimant made a reasonable effort to preserve her employment").

5

Additionally, she claimed that she was no longer "trying to get unemployment off of [Employer.]" *Id.* at 98. However, she stated that she no longer worked at her part-time job and was unfairly denied UC benefits for her second job based on her retirement from her first job. *Id.* at 98-99.

On December 23, 2020, the Board adopted and incorporated the referee's findings of fact and conclusions of law as its own and affirmed the referee's decision.[5] C.R. at 101.

On January 21, 2021, the Board received an email from Claimant. C.R. at 110. Therein, Claimant reiterated the claims she raised in her first appeal to the Board and asked the Board to reconsider its order, as she has been a hard-working employee and paid unemployment withholding tax for many years. *Id.* By letter dated January 28, 2021, the UC Appeals System Administrator advised Claimant that her request for reconsideration was untimely and could not be addressed by the Board. *Id.* at 112. The letter explained that a request for reconsideration must be filed within 15 days after the issuance of the Board's decision, pursuant to 34 Pa. Code § 101.111. However, Claimant's communication was received on January 21, 2021, and, therefore, it was not filed within 15 days of the Board's December 23, 2020 decision. C.R. at 112.

On February 16, 2021, Claimant, again proceeding *pro se*, filed a letter with this Court asking for "help with [her] situation." Claimant's *Pro Se* Communication dated Feb. 16, 2021. She claimed to have sent an appeal letter by

---

[5] The Board briefly addressed Claimant's issue regarding her second employer. It noted that while Claimant maintained on appeal that she attempted to file against her second employer, and not Employer, she was working at the second employer when she filed her UC application. Her disqualifying resignation from Employer therefore triggered Section 401(f) of the UC Law, 43 P.S. § 801(f) (relating to qualifications required to secure compensation), which requires that Claimant earn "an amount equal to or in excess of six (6) times [her] weekly benefit rate[.]"

6

facsimile transmission to the number she "got from unemployment [and] sent it the exact day [she] got it." *Id.* She explained that she received a letter stating that she "sent the wrong stuff in so [she] called and [t]alked to someone who said [she] should [send it via email] ASAP[.]"[6] *Id.* Claimant further explained that she sent an email, and, in response, she received a letter that her email was untimely. *Id.*

On February 23, 2021, the Court sent Claimant information about how to perfect her appeal and file a petition for review. Claimant then obtained counsel, who filed an ancillary petition for review on Claimant's behalf on March 16, 2021. *See* Docket Entries. Claimant's petition for review to this Court raises seven issues, all of which relate to whether the Board erred in concluding that she did not have a necessitous and compelling reason for leaving her employment.[7] Following the filing of Claimant's ancillary petition for review, we issued our March 25, 2021 order, directing the parties to address the timeliness of Claimant's petition in their principal briefs on the merits or in an appropriate motion, with which the parties have complied.

In her brief, Claimant states that she received the Board's decision of December 23, 2020, in a timely manner. Claimant's Br. at 15. She explains that included with the Board's decision was the referee's September 30, 2020 decision. *Id.* Claimant further explains that she turned to the last page of both documents for the appeal instructions and mistakenly failed to discern that the appeal instructions

---

[6] Claimant does not provide the contact number, state who sent the letter, or aver the identity of the person with whom she spoke.

[7] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

related to the referee's decision, and not the Board's decision. *See id.*; *see also* C.R. at 106-07. Claimant asserts that she followed those instructions and timely appealed to UCBoardAppeals@pa.gov, which "was to the wrong venue."[8] Claimant asserts that she was not notified of the mistake until February of 2021, which is when she correctly filed her appeal with this Court. Claimant's Br. at 15. Claimant also makes arguments regarding the merits of her appeal. Claimant's Br. at 11-15.[9]

The Board responds that Claimant's petition for review is clearly untimely. Board's Br. at 7. The Board notes that Claimant has not asserted any reason for the delay that would warrant *nunc pro tunc* review, and further that she admits in her brief that her late appeal was the result of her own negligence. *Id.* at 7-8. The Board cites *Savage v. Unemployment Compensation Board of Review*, 491 A.2d 947 (Pa. Cmwlth. 1985), and *DiBello v. Unemployment Compensation Board of Review*, 197 A.3d 819 (Pa. Cmwlth. 2018), for the proposition that misreading a document is negligent conduct that does not warrant *nunc pro tunc* relief. Board's Br. at 8-9. Further, the Board explains, it is not a tribunal, and thus, an appeal filed erroneously with the Board cannot be transferred to this Court. Board's Br. at 9 (citing *DiJohn v. Unemployment Comp. Bd. of Rev.*, 687 A.2d 1213 (Pa. Cmwlth. 1997) (providing that appeal erroneously filed in this Court cannot be transferred to the Board because the Board is not a tribunal)). Alternatively, the Board contends that, if this Court reaches the merits of Claimant's appeal, Claimant failed to prove cause of a necessitous and compelling nature to voluntarily leave her employment. Board's Br. at 9-14.

---

[8] Claimant contends that she sent the email on December 23, 2020. However, the email is dated January 21, 2021. *See* C.R. at 110.

[9] We note that the factual account contained in Claimant's brief differs from the account made in Claimant's *pro se* letter filed with this Court on February 16, 2021.

8

We first address the timeliness of Claimant's petition for review. A petition for review must be filed within 30 days after the entry of the order from which an appeal is taken. Pa.R.A.P. 1512(a)(1). "An appellate court . . . may not enlarge the time for filing . . . a petition for review[.]" Pa.R.A.P. 105(b). We have long held that

> [t]he timeliness of an appeal and compliance with the statutory provisions which grant the right of appeal go to the jurisdiction of the court to hear and decide the appeal. The courts have no power to extend the period for taking appeals, absent fraud or a breakdown in the court's operation through a default of its officers.

*Iannotta v. Phila. Transp. Co.*, 312 A.2d 475, 476 (Pa. Cmwlth. 1973) (internal citations omitted).

"It is well established that failure to timely appeal an administrative agency's action is a jurisdictional defect; consequently, the time for taking an appeal cannot be extended as a matter of grace or mere indulgence." *H.D. v. Dep't of Pub. Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth. 2000) (citations omitted). A *nunc pro tunc* appeal may be allowed, however, where extraordinary circumstances involving fraud or some breakdown in the administrative process caused the delay in filing, or where non-negligent circumstances related to the petitioner, his or her counsel, or a third party caused the delay. *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130 (Pa. 1996).

Claimant does not cite to any law or present any legal argument as to why her appeal to this Court should be deemed timely. The Board relies on *Savage* and *DiBello* to support its contention that Claimant is not entitled to *nunc pro tunc* relief. In *Savage*, the claimant did not attend the referee's hearing. He misread the date on the hearing notice and claimed that due process required that he receive a

9

hearing. The Board rejected this claim, and this Court affirmed. In so doing, we explained that the claimant in *Savage* did not assert that the hearing notice was incorrect or misleading, but only that he misread the notice. We thus held that misreading the notice constituted negligence on the claimant's part, which could not justify his failure to appear at the hearing. Thus, we concluded that the Board did not err in denying the claimant's request for a new hearing.

In *DiBello*, the claimant received a notice of financial determination stating that she was eligible for 18 weeks of UC benefits. She filed an appeal two months later, asserting that she should have been approved for 26 weeks of benefits, but that her employer submitted the wrong information to the local service center. At a hearing before a referee, the claimant testified that she did not read the notice or realize that she was approved for 18 weeks of benefits and repeated her argument that her employer misreported the number of weeks she worked. Both the referee and the Board concluded that the claimant's appeal was untimely. On appeal to this Court, the claimant argued that the Board erred in denying her *nunc pro tunc* relief because of her employer's error, which she claimed constituted a breakdown of its administrative process. We determined that the employer's error did not constitute an administrative breakdown because it was not an administrative board or body that engaged in fraudulent conduct or its equivalent, and the claimant admitted that she received the notice but did not realize it said 18 weeks instead of 26 weeks. We therefore held that "[m]isreading a determination is negligent conduct that does not warrant *nunc pro tunc* relief." *DiBello*, 197 A.3d at 823. Accordingly, we affirmed the Board.

Here, Claimant asserts that she sent an email to the Board, and not a petition for review to this Court, because she mistakenly read the appeal instructions

10

attached to the referee's decision instead of the appeal instructions attached to the Board's adjudication. We agree with the Board that, like the claimants in *Savage* and *DiBello*, Claimant simply misread the notice, which is negligent conduct that does not warrant *nunc pro tunc* relief.

As described above, Claimant filed her initial *pro se* communication with this Court on February 16, 2021, more than 30 days after the Board mailed its decision on December 23, 2020. *See* Docket Entries; C.R. at 101. Because Claimant filed her *pro se* communication with this Court beyond the 30-day appeal period, and there is no other allegation regarding fraud or a breakdown in operations with respect to the timeliness of its filing, Claimant's *pro se* communication, to the extent it can be viewed as an appeal, was untimely and this Court is therefore without jurisdiction to consider the merits of Claimant's case. Accordingly, we are constrained to dismiss Claimant's petition for review as untimely filed.

Accordingly, Claimant's petition for review to this Court is dismissed as untimely filed.

_____
CHRISTINE FIZZANO CANNON, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Holmes,                          :
                Petitioner              :
                                  :
        v.                          :
                                    :
Unemployment Compensation               :
Board of Review,                        :    No. 301 C.D. 2021
                Respondent              :

O R D E R

AND NOW, this 25th day of March, 2022, the petition for review, filed by Sandra Holmes, is hereby DISMISSED as untimely filed.

_____
CHRISTINE FIZZANO CANNON, Judge